OPINION OF THE COURT
George B. Ceresia, Jr., J.
The above-captioned action has been brought by the State of *810 New York pursuant to article 12 of the Navigation Law by reason of an alleged petroleum discharge at the former Cronin’s Mini-Market, Main Street (Route 22), Peru, New York. From March 1958 to April 1968 the site was owned by an entity known as Copeland Oil which operated an automotive service/ gasoline station thereon. In April 1968 the site was purchased by Sun Oil Company, predecessor of Sunoco, Inc. (Sunoco). On December 14, 1977 the site was sold to Isadore and Evelyn Montgomery. Prior to their acquisition of the property they had leased the site from Sunoco, operating a gasoline station and automobile repair shop. Mr. and Mrs. Montgomery continued operating the premises until August 20, 1984 when they sold the premises and business to Malcolm Lavery and Malcolm Lucas who, on the same day, transferred title to a corporation known as Malcolm Two and Company, Inc. (Malcolm Two). On January 24, 1986 Malcolm Two sold the premises to Thomas J. Cronin and Elizabeth J. Cronin. Keeseville National Bank, predecessor in interest to defendant Evergreen Bank, N. A. (Evergreen Bank), held a mortgage on the premises which Mr. and Mrs. Cronin had assumed. In February 1990 Evergreen Bank commenced an action to foreclose the mortgage. A judgment of foreclosure was obtained on August 16, 1990. The foreclosure sale took place on November 5, 1992.
W.A. Sandri, Inc. and/or A.R. Sandri, Inc. (hereinafter Sandri) had supplied gasoline (for purposes of retail resale) to the parties operating the site from 1981 to 1990.
On December 23, 1992 petroleum contamination of groundwater was reported to have been discovered in the vicinity of the Cronin’s Mini-Market site. The State of New York Department of Environmental Conservation commenced an investigation, and, thereafter, remediation of the petroleum contamination which had been found. The remediation work at the site was completed at the end of 1997, allegedly resulting in the Oil Spill Fund paying $254,843.39 for the remediation work. The plaintiff subsequently commenced the above-captioned action pursuant to Navigation Law article 12 to recover the moneys so expended.
Sandri, Sunoco, Evergreen and Malcolm Two have made various motions and/or cross motions for summary judgment.
Sandri’s Motion For Partial Summary Judgment
Sandri seeks a determination on the narrow issue of whether it could be held liable to plaintiff under the Navigation Law *811 solely by reason that it was the supplier of gasoline to the site. Sandri argues that it should not be deemed a “discharger” within the meaning of the Navigation Law merely because it sold gasoline to the owners of the site between 1981 and 1990. In Sandri’s counsel’s words, “The purpose of the motion is to determine whether the simple act of filling a tank, without more, subjects all motor fuel suppliers (major oil companies and distributors alike) to strict liability as ‘dischargers’ or ‘responsible’ parties under the Navigation Law.” In Sandri’s view, its responsibility as a gasoline distributor/supplier is limited to ensuring (1) that the tank is not overfilled, and (2) that no accidental discharge occurred during the process of transferring the product from the truck to the tank.
Plaintiff, in opposition to the motion, contends that its cause of action against Sandri is not limited to Sandri’s status as a petroleum supplier. Plaintiff indicates, inter alia, that it alleges that Sandri, in addition to being a petroleum supplier, owned the on-site gasoline pumps, ducts and nozzles; that Sandri knew that this equipment malfunctioned; and that Sandri was the sole repairer and sole provider of maintenance to the gasoline facilities. Plaintiff points out that under Sandri’s written contracts with station owners, Sandri retained ownership of the gasoline pumps. Noteworthy, Malcolm Lavery, former officer and shareholder of Malcolm Two, testified during his pretrial deposition that, at least on one occasion, employees of Sandri repaired an underground fill pipe to one of the tanks. Plaintiff takes the position that Sandri is improperly seeking an advisory opinion with regard to its per se liability as a petroleum supplier.
In the court’s view, depending on the evidence adduced at trial, the trial court may well be required to make the determination requested by Sandri, particularly in connection with fashioning a charge for the jury. This is especially true since plaintiff has not retreated from its position that Sandri could be held liable under Navigation Law § 181 (1) as a discharger solely in its capacity as a gasoline supplier. Thus, for this reason, the court finds that the application is analogous to a motion in limine and may properly be addressed.
The court is mindful that “under the Navigation Law, no proof is required of a specific wrongful act or omission which directly caused the spill in order to impose liability” (Domermuth Petroleum Equip. & Maintenance Corp. v Herzog & Hopkins, 111 AD2d 957, 958-959 [3d Dept 1985]). In State of New York v Montayne (199 AD2d 674 [3d Dept 1993]) the Court *812 found that a fuel oil broker who never physically handled the fuel oil (and did not own it) could be held liable as a discharger where an oil spill occurred during delivery. It was reasoned that the broker, who had arranged for the manner and means of delivery of the fuel oil, and was in a position to halt or prevent the discharge, and to effect a cleanup, should be held liable for the discharge (see, State of New York v Montayne, supra, at 675). In Domermuth Petroleum Equip. & Maintenance Corp. v Herzog & Hopkins (supra, at 959) the Appellate Division held that an oil delivery company, which company had recently repaired the tank, could be held liable as a discharger by reason that it “set in motion the events which resulted in the discharge.” In that instance the fuel oil tank had ruptured, discharging its contents into the basement of a residence. In Premier Natl. Bank v Effron Fuel Oil Co. (182 Misc 2d 169 [Sup Ct, Dutchess County 1999]) a fuel oil supplier had delivered oil into an above-ground tank. A hose had been attached to the tank by a prior owner for use in redistribution of fuel oil to another tank. A discharge occurred in which fuel oil 'spilled out through the hose onto the ground. The court held that the fuel oil supplier could be held liable as a discharger, since it had set in motion the events which resulted in the discharge (citing Domermuth, supra).
In all of the above cases some additional factor was involved which in some fashion connected the petroleum supplier to the spill. It was not the act of delivery alone which set in motion the events which resulted in the discharge. By comparison, the rationale for holding the owner of the system liable (even where the owner is innocent) is well stated in Matter of White v Regan (171 AD2d 197, 200-201 [3d Dept 1991], quoting Quaker State Corp. v United States Coast Guard, 681 F Supp 280, 285):
“ ‘When a spill is discovered, response must be swift. If the Government must bear the cost of cleanup, there must be a ready pocket for reimbursement. It is the owner or operator at the time the spill is first discovered who has control of the site and the source of discharge. [The owner] is readily identifiable. [The owner] is most likely to be in position to halt the discharge, to effect an immediate cleanup, or to prevent a discharge in the first place. If the onus of cleanup falls on the Government, [the owner] is the clearest and most expeditious source for reimbursement.’ ”
In the court’s view, it would be unduly burdensome to extend liability for petroleum discharges to petroleum suppliers in the *813 absence of some evidence that the supplier either caused or contributed to the discharge or that it possessed the ability to anticipate and/or prevent the discharge. The court finds that the mere delivery of gasoline to an underground storage tank, of itself — absent other factors — is not sufficient to render a gasoline supplier a discharger. The court concludes that Sandri is entitled to partial summary judgment determining that its status as a petroleum supplier does not, without more, render it a discharger under the Navigation Law.
Accordingly, it is ordered that the motion of W.A. Sandri, Inc. and A.R. Sandri, Inc. for partial summary judgment is granted; and it is ordered that W.A. Sandri, Inc. and A.R. Sandri, Inc. may not be held liable to plaintiff as a discharger under Navigation Law § 181 (1) based solely on the fact that they supplied gasoline to the Cronin Mini-Market site.
[Portions of opinion omitted for purposes of publication.]